IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **NUCOR CORPORATION,** <br><br>         **Plaintiff,** <br><br>    v. <br><br> **UNITED STATES,** <br><br>         **Defendant.** | **Before: Hon.** _____ <br><br> **Court No. 22-00137** |

## COMPLAINT

Plaintiff Nucor Corporation ("Plaintiff" or "Nucor"), by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff brings this Complaint to contest portions of the U.S. Department of Commerce's ("Commerce") final results of the 2019 administrative review of the countervailing duty order on *Certain Cold-Rolled Steel Flat Products from the Republic of Korea*. The final results were issued on April 1, 2022 and were published in the *Federal Register* on April 8, 2022. *See Certain Cold-Rolled Steel Flat Products from the Republic of Korea*, 87 Fed. Reg. 20,821 (Dep't Commerce Apr. 8, 2022) (final results of countervailing duty admin. rev.; 2019) ("Final FR Notice") and accompanying Issues and Decision Memorandum ("Final Decision Memo").

### JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (B)(iii).

**Court No. 22-00137**

## STANDING

3.  Plaintiff is a U.S. producer of subject cold-rolled steel flat products, an interested party within the meaning of 19 U.S.C. § 1677(9)(C), and was a party to the administrative review in connection with which this matter arises. Accordingly, Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4.  Plaintiff commenced this action by filing a Summons on May 6, 2022, within 30 days after the publication of the Final Results in the *Federal Register*. Summons (May 6, 2022), ECF No. 1. Plaintiff is filing this Complaint within 30 days after filing the Summons. The Summons and Complaint, therefore, are timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

5.  On July 29, 2016, Commerce published its final determination in the countervailing duty investigation of *Certain Cold-Rolled Steel Flat Products from the Republic of Korea*. *Countervailing Duty Investigation of Certain Cold-Rolled Steel Flat Products from the Republic of Korea*, 81 Fed. Reg. 49,943 (Dep't Commerce July 29, 2016) (final affirm. deter.). On September 20, 2016, Commerce published the countervailing duty order in the *Federal Register*. *Certain Cold-Rolled Steel Flat Products from Brazil, India, and the Republic of Korea*, 81 Fed. Reg. 64,436 (Dep't Commerce Sept. 20, 2016) (amended final affirm. countervailing duty deter. and countervailing duty order (the Republic of Korea) and countervailing duty orders (Brazil and India)). Commerce initiated the administrative review subject to this Complaint on October 30, 2020, covering the period of review of January 1, 2019

to December 31, 2019. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 68,840, 68,846 (Dep't Commerce Oct. 30, 2020).

6. On February 24, 2021, Nucor and U.S. Steel Corporation (collectively "Petitioners") timely filed new subsidy allegations. Letter from Wiley Rein, LLP and Cassidy Levy Kent (USA) LLP to Acting Sec'y of Commerce, re: *Certain Cold-Rolled Steel Flat Products from the Republic of Korea: New Subsidy Allegations* (Feb. 24, 2021). Petitioners alleged that the Government of Korea ("GOK") provided countervailable subsidies to the steel industry, including Korean cold-rolled steel producers, in the form of electricity for less than adequate remuneration. *See generally, id.* Commerce initiated a review of this alleged subsidy on March 12, 2021. Memorandum from Moses Y. Song & Natasia Harrison, Int'l Trade Compliance Analysts, Off. VI, AD/CVD Operations, through Brian C. Davis, Program Manager, Off. VI, AD/CVD Operations, to Dana S. Marmelstein, Off. Dir., Off. VI, AD/CVD Operations, re: *Countervailing Duty Administrative Review of Cold-Rolled Steel Flat Products from the Republic of Korea: New Subsidy Allegation* (Mar. 12, 2021).

7. Commerce issued supplemental questionnaires regarding this subsidy allegation to the GOK and the mandatory respondents Hyundai Steel Co., Ltd. ("Hyundai Steel") and POSCO, who provided responses on March 25, 2021, March 22, 2021, and March 29, 2021, respectively. Letter from Yoon & Yang to Sec'y of Commerce, re: *Certain Cold-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-882: GOK's New Subsidy Allegation Questionnaire Response* (Mar. 25, 2021) ("GOK NSA QR"); Letter from Morris, Manning & Martin, LLP to Sec'y of Commerce, re: *Certain Cold-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-882: Hyundai Steel's New Subsidy Allegation Questionnaire Response* (Mar. 22, 2021) ("Hyundai Steel NSA QR"); Letter from Morris, Manning & Martin,

**Court No. 22-00137**

LLP to Sec'y of Commerce, re: *Certain Cold-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-882: POSCO's New Subsidy Allegation Questionnaire Response* (Mar. 29, 2021) ("POSCO NSA QR").

8. In its questionnaire response, the GOK described the structure of the Korean electricity market and the operations of the state-owned electric utility, the Korea Electric Power Corporation ("KEPCO"). It explained that "KEPCO is the exclusive supplier of electricity in Korea," but that "KEPCO itself does not generate electricity." GOK NSA QR at 3-4. Instead, KEPCO "purchases electricity from generators" through a market called the Korea Power Exchange ("KPX") "and transmits and distributes {the electricity} to customers." *Id.* at 3. The GOK provided information showing that most electricity is generated by six generators that are wholly-owned and consolidated KEPCO subsidiaries, and that the KPX in turn is wholly-owned by KEPCO and its six generation subsidiaries. *Id.* at 5, Exhibit E-1, p. 30-31, 35. The GOK further explained that the price at which KEPCO purchases electricity from generators through the KPX is determined by a formula consisting of a variable cost component, a fixed cost component, and an "adjustment coefficient factor," which "prevent{s} KEPCO's overpayment" to certain types of generators. *Id.* at 28-30. Each of these elements of the electricity price is determined by a "Cost Evaluation Committee" within the KPX and not by the generators themselves. *Id.* at 28-29.

9. The GOK also provided KEPCO's 2019 cost data for supplying electricity. *Id.* at Exhibit E-17. It explained that these costs "include{d} the payment for the purchase of electricity, labor costs, grid maintenance fee" and various taxes and fees that were "not related to the sales of electricity . . . ." *Id.* at 13. With respect to sales prices, the GOK explained that the mandatory respondents paid for electricity based on industrial electricity prices in a generally

4

**Court No. 22-00137**

applicable electricity tariff schedule with different prices for on-peak, mid-peak, and off-peak demand periods. *Id.* at 18, Exhibit E-9. Hyundai Steel and POSCO reported the monthly volume and value of their electricity consumption during each of these demand periods. Hyundai Steel NSA QR at Exhibit NSA-2; POSCO NSA QR at Exhibit NSA-2.

10. Commenting on the GOK's questionnaire responses, U.S. Steel pointed out that Commerce could not simply rely on the cost data provided by the GOK as representative of market-based costs. First, KEPCO's cost data represented only KEPCO's cost of purchasing electricity from generators through the KPX market and not the actual costs of generating electricity. Letter from Cassidy Levy Kent, LLP to Sec'y of Commerce, re: *Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Deficiency Comments Concerning the GOK's NSA SQR and Rebuttal Factual Information* (Apr. 12, 2021) at 3. U.S. Steel noted that the largest electricity generation companies "are wholly owned subsidiaries of KEPCO and three of those {companies} were unprofitable during the POR." *Id.* at 4. As a result, "it is insufficient to only have data concerning KEPCO's acquisition costs because the {generation companies} are affiliates of KEPCO and did not receive sufficient return from sales to KEPCO to be profitable." *Id.* U.S. Steel also noted that each element of the formula on which KEPCO's acquisition price is based was assigned by the KPX Cost Evaluation Committee and not determined by the generators themselves. *Id.* at 11-12. U.S. Steel asked Commerce to collect additional information to address these and other related issues in the GOK's questionnaire responses. *See generally id.* Commerce did not attempt to collect additional information regarding the actual costs of electricity generation from the generators or the cost assignments of the KPX Cost Evaluation Committee.

11. Commerce issued the preliminary results of the administrative review on September 30, 2021 and published them in the Federal Register on October 6, 2021. Preliminary Decision Memorandum accompanying *Certain Cold-Rolled Steel Flat Products from the Republic of Korea*, 86 Fed. Reg. 55,572 (Dep't Commerce Oct. 6, 2021) (prelim. results of countervailing duty admin. rev.; 2019). Applying a "tier three" benefit methodology, Commerce preliminarily determined that KEPCO supplied electricity to the mandatory respondents for less than adequate remuneration under certain tariff classes but calculated a non-measurable benefit amount. *Id.* at 32-39.

12. With respect to the price at which KEPCO purchased electricity through the KPX, Commerce reasoned that in prior administrative reviews, it had "examined KPX, in the context of an upstream subsidy allegation," and found that there was no benefit conferred by "KPX's prices of the {generation companies'} electricity to KEPCO . . . ." *Id.* at 36-37. It also found that "the GOK provided financial statements for the {generation companies}" and determined "that each of the six {generation companies} recovered its costs." *Id*. at 37.

13. With respect to the prices at which KEPCO sold electricity to end users, including the respondents, Commerce "preliminarily determine{d} that KEPCO does have a pricing mechanism in place that is based on market principles, but also that the industrial rates did not always recover costs and a rate of return . . . ." *Id.* at 38. For this analysis, Commerce relied on KEPCO's overall cost recovery rates and found that a benefit exists on sales under a specific tariff class to the extent that KEPCO did not cover its costs, inclusive of a return on investment, on sales to all customers in that tariff class. *See* Memorandum from Moses Y. Song, Int'l Trade Compliance Analyst, Off. VI, AD/CVD Operations, to Brian C. Davis, Program Manager, Off. VI, AD/CVD Operations, re: *Countervailing Duty Administrative Review of Certain Cold-Rolled*

**Court No. 22-00137**

*Steel Flat Products from the Republic of Korea: Calculations for the Preliminary Results: Hyundai Steel* (Sept. 30, 2021) at 7-8; Memorandum from Natasia Harrison, Int'l Trade Compliance Analyst, AD/CVD Operations, Off. VI, through Brian C. Davis, Program Manager, AD/CVD Operations, Off. VI, to the File re: *Countervailing Duty Administrative Review of Certain Cold-Rolled Steel Flat Products from the Republic of Korea; Calculations for the Preliminary Results: POSCO* (Sept. 30, 2021) at 9-10.

14. Nucor filed its case brief on November 5, 2021, arguing that Commerce's methodology for determining the benefit conferred by the provision of electricity for less than adequate remuneration was improper and should be modified for the final determination. Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Case Brief* (Nov. 5, 2021).

15. First, Nucor noted the evidentiary flaws with the cost data on which Commerce relied and argued that it was improper to presume that the data reflected market-based costs. *Id.* at 5-6. Because the record was closed and Commerce had decided to rely on KEPCO's cost data as reported by the GOK, however, Nucor argued that this data nevertheless showed that a benefit was conferred. Nucor argued that the tier three standard for electricity programs as previously articulated by Commerce is that a benefit is conferred "if the tariff *charged to the respondent* does not cover 'cost of production' plus a 'profitable return on investment' . . . ." *Id.* at 9. Nucor thus argued that Commerce erred by finding that no benefit was conferred under a particular tariff class when KEPCO covered its costs inclusive of investment return on all sales to all customers in the aggregate. *Id.* at 9-12. Nucor argued that basing the benefit analysis on the aggregate performance of the government supplier rather than on the prices actually paid by the

**Court No. 22-00137**

respondents under review was contrary to the statute, Commerce regulations, and clearly articulated court and agency precedent.  *Id.*

16.  Commerce issued the Final Results on April 1, 2022 and published them in the Federal Register on April 8, 2022.  Final Decision Memo.

17.  Commerce continued to determine whether the provision of electricity for less than adequate remuneration conferred a benefit based on KEPCO's costs and revenues in the aggregate under the relevant tariff classes.  *Id.* at 20-25.  Commerce reasoned that Nucor's arguments were "inapposite to a tier-three analysis," and that "an evaluation of a government supplier's income and costs and whether the income covers costs and profit . . . has consistently been part of our analysis when assessing whether KEPCO's pricing is consistent with market principles and has been found to meet the requirements of {the regulation}."  *Id.* at 22.

18.  According to Commerce, its:

> {T}ier-three methodology has been first to determine whether the prices are market-based.  Where prices are set in accordance with market principles, and thus, at fair value, we determine no benefit is conferred; where prices are not market-based (*i.e.*, they have not recovered costs plus profit), we determine a benchmark price that would be market-based and compare that to the prices that were actually paid.

*Id.* at 23-24.  Commerce also determined that the KEPCO cost data as reported by the GOK reflected market prices because "the wholesale and retail pricing is based on price-setting methodologies that aim to ensure companies in the chain are able to cover their costs, as well as a rate of profit."  *Id.* at 23.

19.  Based in part on the determination that no measurable benefit was conferred by the provision of electricity for less than adequate remuneration, Commerce calculated final subsidy rates of 0.46%, or *de minimis*, for Hyundai Steel and 0.22%, or *de minimis*, for POSCO.  Final FR Notice, 87 Fed. Reg. at 20,823.  This appeal followed.

8

Court No. 22-00137

## CLAIMS AND BASES FOR RELIEF

### Count I

20. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 19.

21. Commerce's determination that the provision of electricity for less than adequate remuneration conferred a non-measurable benefit was unsupported by substantial evidence and otherwise not in accordance with law.

### REQUEST FOR JUDGMENT AND RELIEF

For the reasons stated in this Complaint, Plaintiff respectfully requests that the Court:

(1) Hold that Commerce's final results in the 2019 countervailing duty administrative review of *Certain Cold-Rolled Steel Flat Products from the Republic of Korea* are not supported by substantial evidence on the record and are otherwise not in accordance with law; and

(2) Remand the Final Results to Commerce for disposition consistent with the Court's final opinion.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Adam M. Teslik, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Nucor Corporation*

Dated: June 6, 2022

# CERTIFICATE OF SERVICE

PUBLIC SERVICE

*Nucor Corporation v. United States*
**Court No. 22-00137**

I certify that a copy of this public submission was served on the following parties, via certified mail, first-class international mail (*), and electronic service, on June 6, 2022.

                  /s/ Adam M. Teslik

Thomas M. Beline, Esq.
**Cassidy Levy Kent (USA) LLP**
900 19th Street, NW
Suite 400
Washington, DC 20006

Stephen P. Vaughn, Esq.
**King & Spalding LLP**
1700 Pennsylvania Avenue, NW
Washington, DC 20006

Roger B. Schagrin, Esq.
**Schagrin Associates**
900 7th Street, NW
Suite 500
Washington, DC 20001

Brady W. Mills, Esq.
**Morris, Manning & Martin, LLP**
1401 I Street, NW
Suite 600
Washington, DC 20005

*Sungbum Lee
**Yoon & Yang LLC**
34th floor, ASEM Tower
517 Yeongdongdaero, Gangnamgu
Seoul, South Korea

Seokjoong Woo
**Embassy of the Republic of Korea**
2450 Massachusetts Avenue, NW
Washington, DC 20008

Elizabeth A. Speck
**U.S. Department of Justice**
Commercial Litigation Branch – Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

General Counsel
**U.S. Department of Commerce**
14th Street and Constitution Avenue, NW
Washington, DC 20230