Slip Op. 23-55

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NUCOR CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> GOVERNMENT OF THE REPUBLIC OF KOREA, <br><br> Defendant-Intervenor. | Before:  Jennifer Choe-Groves, Judge <br><br> Court No. 22-00137 |

**OPINION AND ORDER**

[Sustaining the final results of the administrative review by the U.S. Department of Commerce in the countervailing duty investigation of certain cold-rolled steel flat products from the Republic of Korea.]

Dated: April 19, 2023

Alan H. Price, Christopher B. Weld, Tessa V. Capeloto, and Adam M. Teslik, Wiley Rein, LLP, of Washington, D.C., for Plaintiff Nucor Corporation.

L. Misha Preheim, Assistant Director, and Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia

M. McCarthy, Director.  Of Counsel was W. Mitch Purdy, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Yujin K. McNamara, Sarah S. Sprinkle, Daniel M. Witkowski, Devin S. Sikes, Sydney L. Stringer, and Sung Un K. Kim, Akin Gump Strauss Hauer & Feld LLP, of Washington, D.C., for Defendant-Intervenor Government of the Republic of Korea.

Choe-Groves, Judge: Plaintiff Nucor Corporation ("Nucor") challenges the U.S. Department of Commerce's ("Commerce") Certain Cold-Rolled Steel Flat Products From the Republic of Korea ("Korea"): Final Results of Countervailing Duty Administrative Review; 2019.  Compl., ECF No. 9; Certain Cold-Rolled Steel Flat Products From the Republic of Korea ("Final Results"), 87 Fed. Reg. 20,821 (Dep't of Commerce Apr. 8, 2022) (final results of countervailing duty administrative review; 2019); see also Issues and Decision Mem. Accompanying Certain Cold-Rolled Steel Flat Products From the Republic of Korea ("Final IDM"), PR 198.[1]

Nucor challenges Commerce's determination that the Government of Korea's provision of electricity for less than adequate remuneration did not confer a benefit.  Pl.'s R. 56.2 Mot. J. Agency R. and Mem. Supp. ("Pl.'s Br."), ECF Nos. 27, 28; Pl.'s Reply Br. Supp. R. 56.2 Mot. J. Agency R. ("Pl.'s Reply Br."), ECF

---

[1] Citations to the administrative record reflect the public administrative record ("PR") document numbers.  ECF No. 35.

Nos. 32, 33.  Defendant United States ("Defendant") and Defendant-Intervenor the Government of the Republic of Korea ("Government of Korea") argue that the Court should sustain the Final Results.  Def.'s Resp. Br. Opp'n Pl.'s R. 56.2 Mot. J. Agency R. ("Def.'s Resp. Br."), ECF No. 29; Def.-Interv.'s Mem. Opp'n Pl.'s R. 56.2 Mot. J. Agency R., ECF Nos. 30, 31.  For the reasons discussed below, the Court sustains Commerce's Final Results.

## BACKGROUND

Commerce published its countervailing duty order in the Federal Register. Certain Cold-Rolled Steel Flat Products from Brazil, India, and the Republic of Korea, 81 Fed. Reg. 64,436 (Dep't of Commerce Sept. 20, 2016) (amended final affirmative countervailing duty determination and countervailing duty order (the Republic of Korea) and countervailing duty orders (Brazil and India).  Commerce initiated an administrative review of the countervailing duty order on certain cold-rolled steel flat products from Korea for the period of review of January 1, 2019, to December 31, 2019.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 85 Fed. Reg. 68,840, 68,846–47 (Dep't of Commerce Oct. 30, 2020).  Petitioners U.S. Steel Corporation ("U.S. Steel") and Nucor filed new subsidy allegations.  Letter from Cassidy Levy Kent (USA) LLP and Wiley Rein LLP to Sec'y of Commerce, re: Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Petitioners' New Subsidy Allegations (Feb. 24, 2021), PR

83–84.  Nucor and U.S. Steel alleged that the Government of Korea provided countervailable subsidies to the steel industry in the form of electricity for less than adequate remuneration.  See id.  Commerce initiated a review of the alleged subsidy.  Memorandum from Moses Y. Song & Natasia Harrison, Int'l Trade Compliance Analysts, to Dana S. Mermelstein, Off. Director, re: Countervailing Duty Administrative Review of Certain Cold-Rolled Steel Flat Products from the Republic of Korea: New Subsidy Allegation (Mar. 12, 2021), PR 107.  Commerce issued supplemental questionnaires regarding the subsidy allegation to the Government of Korea and to mandatory respondents Hyundai Steel and POSCO (collectively, "mandatory respondents"), each of whom provided responses.  Letter from Yoon & Yang LLC and Morris, Manning & Martin LLP to Sec'y of Commerce, re: Certain Cold-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-882: Government of Korea's New Subsidy Allegation Questionnaire Response (Mar. 25, 2021) ("Government of Korea's NSAQR") PR 121–122; Letter from Morris, Manning & Martin, LLP to Sec'y of Commerce, re: Certain Cold-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-882: Hyundai Steel's New Subsidy Allegation Questionnaire Response (Mar. 22, 2021) ("Hyundai Steel's NSAQR"), PR 120; Letter from Morris, Manning & Martin, LLP to Sec'y of Commerce, re: Certain Cold-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-882: POSCO's New Subsidy

Allegation Questionnaire Response (Mar. 29, 2021) ("POSCO'S NSAQR"), PR 123.

Commerce issued the Preliminary Results and the Final Results of the administrative review. Certain Cold-Rolled Steel Flat Products from the Republic of Korea ("Preliminary Results"), 86 Fed. Reg. 55,572 (Dep't of Commerce Oct. 6, 2021) (preliminary results of countervailing duty administrative review, 2019); Preliminary Decision Memorandum accompanying Certain Cold-Rolled Steel Flat Products from the Republic of Korea, 86 Fed. Reg. 55,572 (Dep't Commerce Oct. 6, 2021) (prelim. results of countervailing duty admin. rev., 2019) ("Prelim. DM"), PR 169; Final Results, 87 Fed. Reg. 20,821; Final IDM. In the Final IDM, Commerce explained that it applied a "Tier 3 analysis" pursuant to 19 C.F.R. § 351.511(a)(2)(iii) to assess whether the electricity prices charged by the Korea Electricity Power Corporation ("KEPCO") were consistent with market principles by evaluating whether the electricity prices allowed for the recovery of costs plus a rate of recovery or profit. Final IDM at 20–25. Using this methodology, Commerce determined that some electricity prices were in line with market principles and some were not, with the difference between the price paid and the benchmark being the benefit conferred. Id. at 21. Commerce determined that no measurable benefit was conferred in this administrative review. Id. at 20–25.

Commerce calculated de minimis final subsidy rates of 0.46% for Hyundai Steel and 0.22% for POSCO. Final Results, 87 Fed. Reg. at 20,821, 20,823.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final results of an administrative review of a countervailing duty order. The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.   Countervailable Subsidy Overview

A countervailable subsidy exists when a foreign government provides a financial contribution to a specific industry that confers a benefit upon a recipient within the industry. 19 U.S.C. § 1677(5); see also Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365, 1369 (Fed. Cir. 2014). A countervailable benefit shall normally be treated as conferred if goods or services are provided for less than adequate remuneration. 19 U.S.C. § 1677(5)(E)(iv); see also POSCO v. United States, 977 F.3d 1369, 1371 (Fed. Cir. 2020). "For purposes of clause (iv), the adequacy of remuneration shall be determined in relation to prevailing market conditions for the good or service being provided . . . in the country which is

subject to the investigation or review. Prevailing market conditions include price, quality, availability, marketability, transportation, and other conditions of purchase or sale." 19 U.S.C. § 1677(5)(E).

Commerce's regulations provide a three-tiered approach for determining the adequacy of remuneration of an investigated good or service. See 19 C.F.R. § 351.511(a)(2). The Tier 1 and Tier 2 analyses compare the government price to a market-based price for the good or service in the country in question, or in a world market. Id. § 351.511(a)(2)(i), (ii). The Tier 3 analysis provides that when both an in-country market-based price and a world market price are unavailable, Commerce examines whether the government price is consistent with market principles. Id. § 351.511(a)(2)(iii). Commerce makes this determination based on "information from the foreign government about how it sets its price." Fine Furniture (Shanghai) Ltd., 748 F.3d at 1370. "[I]f Commerce determines that government pricing is not consistent with market principles, then 'a benefit shall normally be treated as conferred.'" POSCO, 977 F.3d at 1372 (quoting 19 U.S.C. § 1677(5)(E)(iv)); see also Nucor Corp. v. United States, 927 F.3d 1243 (Fed. Cir. 2019) (discussing Commerce's application of the three-tier methodology).

**II.     Nucor's Allegations and Commerce's Determination**

Nucor challenges as unsupported by substantial evidence and not in accordance with the law Commerce's determination that the Government of

Korea's provision of electricity for less than adequate remuneration did not confer a benefit. Compl. at 9.

### A. Whether Commerce's Determination was in Accordance with the Law

Nucor argues that Commerce's determination was unlawful because Commerce disregarded the government price to respondents and purportedly should have determined whether a benefit was conferred to a specific respondent individually, not in the aggregate. See Pl.'s Br. at 12–24. Nucor asserts that 19 U.S.C. § 1677f–1(e) requires Commerce to determine whether a benefit was conferred to an *individual entity*. Id. at 13. 19 U.S.C. § 1677f–1(e)(1) states that:

> In determining countervailable subsidy rates . . . the administering authority shall determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise.

19 U.S.C. § 1677f–1(e)(1). Nucor contends that 19 U.S.C. § 1677f–1(e) requires Commerce to focus on the "prices that the respondents actually paid KEPCO for electricity" rather than KEPCO's cost by classification data reflecting KEPCO's total cost of sales and total sales income. Pl.'s Br. at 16.

In the Final IDM, Commerce continued to determine that its Tier 3 analysis required Commerce to assess whether the electricity prices charged by KEPCO were consistent with market principles by evaluating whether the electricity prices allowed for the recovery of costs plus a rate of recovery or profit. Final IDM at 20.

Commerce explained that Commerce's analysis focused not on KEPCO's total revenue, but on KEPCO's methodology for determining the adequacy of its pricing through cost and revenue data. Id. at 21–22. Commerce determined that under the Tier 3 analysis: (1) KEPCO fully recovered costs and did not confer a benefit; or (2) the prices for electricity resulted in a non-measurable benefit during the period of review. Final IDM at 20. Commerce explained:

> [O]ur [Tier 3] analysis for electricity in Korea assesses whether the electricity prices charged by KEPCO are consistent with market principles by evaluating the electricity prices to see if they allow for the recovery of costs, plus a rate of return or profit. This well-established approach has been relied upon by Commerce in many cases and upheld by the [U.S. Court of Appeals for the Federal Circuit] in both Nucor and POSCO. To the extent that we determine that the electricity prices are in line with market principles, then we determine that no benefit is conferred. . . . In this review, we determined that some electricity prices were in line with market principles and, therefore did not confer a benefit. Other electricity price categories did not cover costs plus a rate of recovery; for electricity purchased at those prices, we determined a benchmark consistent with market principles and we calculated a benefit amount. Furthermore, Hyundai Steel and POSCO reported paying electricity prices that are listed on KEPCO's electricity rate schedule, and supporting documentation indicated that Hyundai Steel and POSCO's operations were classified under the correct electricity consumption categories.

Id. at 20–21. Defendant asserts that Commerce's analysis was lawful and in conformity with the U.S. Court of Appeals for the Federal Circuit's ("CAFC") decisions in Nucor and POSCO. Def.'s Br. at 19–26.

The Court notes that 19 U.S.C. § 1677f–1(e)(1) refers to the requirement that Commerce determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise, which Commerce satisfied here when it determined individual countervailable subsidy rates of 0.46% for Hyundai Steel and 0.22% for POSCO. <u>Final Results</u>, 87 Fed. Reg. at 20,823. The language of 19 U.S.C. § 1677f–1(e)(1) does not require that Commerce focus on the prices that the respondents actually paid KEPCO for electricity, as alleged by Nucor. Commerce explained that notwithstanding Nucor's challenge, Commerce did contemplate the prices paid by mandatory respondents Hyundai Steel and POSCO when Commerce considered the prices paid by all companies, because Hyundai Steel and POSCO paid the same prices that other companies paid within the corresponding electricity consumption classifications.

Nucor also contends that 19 C.F.R. § 351.503(b)(1) requires Commerce to analyze whether a benefit was conferred when an individual firm pays less for its inputs than it would otherwise pay. Pl.'s Br. at 12–15. 19 C.F.R. § 351.503(b)(1) states that:

> For other government programs, [Commerce] normally will consider a benefit to be conferred where a firm pays less for its inputs (e.g., money, a good, or a service) than it otherwise would pay in the absence of the government program, or receives more revenues than it otherwise would earn.

19 C.F.R. § 351.503(b)(1). Nucor argues that 19 C.F.R. § 351.503(b)(1) compels Commerce to consider the price paid by "the firm" or an individual respondent. Pl.'s Br. at 12–15.

Commerce explained that, "[w]hile Nucor appears to argue that we should disregard a market analysis of KEPCO's pricing and simply focus on the price charged to the respondents, 19 C.F.R. [§] 351.511(a)(2)(iii) necessarily requires that we evaluate whether KEPCO's pricing is consistent with market principles, which the record demonstrates." Final IDM at 22. 19 C.F.R. § 351.511(a)(2)(iii) states in relevant part:

> If there is no world market price available to purchasers in the country in question, the Secretary will normally measure the adequacy of remuneration by assessing whether the government price is consistent with market principles.

19 C.F.R. § 351.511(a)(2)(iii).

As discussed above, Commerce considered the prices paid by mandatory respondents POSCO and Hyundai Steel when Commerce considered the prices paid by all companies, because POSCO and Hyundai Steel paid the same prices that other companies paid within the corresponding electricity consumption classifications. Moreover, Commerce's determination regarding whether the prices paid by all companies, including POSCO and Hyundai Steel, were consistent with market principles, was in conformity with the relevant statute's

instruction for Commerce to determine the adequacy of remuneration in relation to prevailing market conditions, including price, quality, availability, marketability, transportation, and other conditions of purchase or sale. 19 U.S.C. § 1677(5)(E). When conducting a Tier 3 analysis, the CAFC has held that Commerce has "considerable prima facie leeway to make a reasonable choice within the permissible range" of calculation methodologies, so long as that choice is properly justified "based on the language and policies of the countervailing-duty statutes . . . and other practical considerations." Nucor Corp., 927 F.3d at 1255. The Court concludes that Commerce's determination was reasonable and in accordance with the law.

### B. Whether Commerce's Determination was Supported by Substantial Evidence

Nucor challenges as unsupported by substantial evidence Commerce's determination that the Government of Korea's provision of electricity for less than adequate remuneration did not confer a benefit. Compl. at 9. In order to analyze the structure of the Korean electricity market and the role that the Korean Power Exchange ("KPX") played in price setting, Commerce reviewed record documents, including questionnaire responses filed by the Government of Korea, POSCO, and Hyundai Steel regarding the structure of the Korean electricity market and

operations of KEPCO. Final IDM at 21–25; Government of Korea's NSAQR; POSCO's NSAQR; Hyundai Steel's NSAQR.

For example, Commerce reviewed the Government of Korea's NSAQR to support Commerce's determination that POSCO and Hyundai Steel reported paying electricity prices that were listed on KEPCO's electricity rate schedule and that POSCO and Hyundai Steel's operations were classified under the correct electricity consumption categories. Final IDM at 21. Exhibit E-9 to the Government of Korea's NSAQR cited by Commerce is a document entitled "Electricity Tariff Schedules" and provides applicable rate schedules for various classifications of electricity, including industrial electricity rates for different voltage levels with corresponding demand charge in won/kWh and energy charge in won/kWh. Final IDM at 21; Government of Korea's NSAQR at Exhibit E-9. Commerce also cited POSCO's NSAQR at Exhibits NSA-2 to NSA-3, which are documents entitled "Electricity Template" and "Electricity Bills for July 2019," and Hyundai Steel's NSAQR at Exhibits NSA-2 to NSA-3, which are documents entitled "Electricity Template" and "Electricity Bills for July 2019." Final IDM at 21; POSCO's NSAQR at Exhibits NSA-2, NSA-3; Hyundai Steel's NSAQR at Exhibits NSA-2, NSA-3. Commerce determined based on a review of these record documents that POSCO and Hyundai Steel reported paying electricity prices that were listed on KEPCO's electricity rate schedule. Final IDM at 25.

Commerce also determined based on record evidence that KPX's standardized electricity pricing system included fixed and variable costs to ensure that the expected rate of return was suitably allocated between the independent generators along with KEPCO and the six wholly-owned subsidiary generators (GENCOs) in the KPX market. See Id. at 23. For example, Commerce cited the Government of Korea's NSAQR to support its determination that KEPCO was obligated to pay the GENCOs for the total cost of generating electricity, including interest on loans, even if KEPCO was not profitable. Id.; Government of Korea's NSAQR at 31 (stating that "if KEPCO generates profit from the sale of electricity, such profit is shared with its generators, and vice versa. KEPCO and its subsidiaries enjoy the profits and share the risks because KEPCO wholly owns its six subsidiaries, and KEPCO needs to have its subsidiaries operate stably. Nevertheless, KEPCO is obligated to pay its subsidiaries the total cost . . . regardless of whether KEPCO has generated profit or not").

Commerce determined based on record evidence such as the Government of Korea's Supplemental NSAQR that the Government of Korea provided a detailed explanation and supporting documentation of how KEPCO's profit rate was calculated and how it was based on KEPCO's operations. Final IDM at 24 (citing Letter from Yoon & Yang LLC and Morris, Manning & Martin, LLP to Sec'y of Commerce, re: Certain Cold-Rolled Steel Flat Products from the Republic of

Korea, Case No. C-580-882: Government of Korea's New Subsidy Allegation Supplemental Questionnaire Response (Apr. 8, 2021) ("Government of Korea's Supplemental NSAQR") at 4–5, PR 126) (providing answers to questions detailing how the rate of return was calculated)). Commerce also determined based on record evidence that the prices paid by POSCO and Hyundai Steel were those set by KEPCO's electricity rate schedules. Id. at 25 (citing the Government of Korea's NSAQR at Exhibit E-9) (providing rate schedules for electricity).

The Court notes that Nucor alleges that "overwhelming record evidence to the contrary" shows that Commerce's determination is not supported by substantial evidence, but Nucor fails to provide evidence substantiating this claim. Pl.'s Br. at 23. Mere allegations are insufficient to raise doubts as to the veracity of the evidence upon which Commerce relied in making its determination. Asociacion Colombiana de Exportadores de Flores v. United States, 13 CIT 13, 15, 704 F. Supp. 1114, 1117 (1989) (holding that "[s]peculation is not support for a finding").

The Court concludes that Commerce's determination is supported by substantial evidence because Commerce cited record documents, including the questionnaire responses of the Government of Korea, POSCO, and Hyundai Steel, showing that the respondents did not receive a measurable benefit and "Hyundai Steel and POSCO paid electricity prices that are charged to all companies in the corresponding electricity consumption classifications[.]" Final IDM at 22; see

POSCO, 977 F.3d at 1374 ("If the rate charged is consistent with the standard pricing mechanism and the company under investigation is, in all other respects, essentially treated no differently than other companies and industries which purchase comparable amounts of electricity, then there is no benefit.").

## CONCLUSION

The Court holds that Commerce's determination that the Government of Korea does not subsidize the Korean steel industry through the provision of electricity for less than adequate remuneration is supported by substantial evidence and in accordance with the law. The Court sustains the Final Results. Judgment will issue accordingly.

                                                    /s/ Jennifer Choe-Groves
                                                  Jennifer Choe-Groves, Judge

Dated:    April 19, 2023
            New York, New York